CYRUS R. TEED *et al.*

*v.*

VIENNA R. PARSONS.

*Opinion filed April 24, 1903.*

1. PARTNERSHIP—*rule as to execution of note by member of a "non-trading" partnership.* In partnerships not commercial in their nature, one partner cannot bind the others by executing a promissory note unless authority is expressly given or recognized by all the partners or implied from general business habits.

2. SAME—*burden of proving authority to bind partners of non-trading firm is on the plaintiff.* In an action upon a promissory note signed by a partner in a non-trading firm, the burden of proving authority to bind the other partners is upon the plaintiff.

3. SAME—*a business purpose is essential to a partnership.* A partnership is a voluntary association arising out of contract to carry on a joint business with the object of making a profit to be shared among the partners.

4. SAME—*what is not a partnership.* An association organized for religious and social purposes, the members putting in their property and living as one family, with everything in common, there being no business or profit sharing, is in the nature of a tenancy in common, and is not a partnership.

5. EVIDENCE—*when note is not admissible against members of religious organization.* A note signed by the founder of a religious and social organization is not admissible in evidence against the other

members of the association as a partnership obligation, in the absence of proof of authority to bind them by executing the note or of a subsequent ratification, even though the note is for money paid into the funds of the association by the holder.

*Teed* v. *Parsons*, 100 Ill. App. 342, reversed.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

C. W. GREENFIELD, for plaintiffs in error.

DAVID FALES, and RITSHER, MONTGOMERY & HART, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The defendant in error, Vienna R. Parsons, brought her action of assumpsit in the circuit court of Cook county against the plaintiffs in error, Cyrus R. Teed, Virginia H. Andrews, Annie G. Ordway, Bertha Boomer, Mary Macomber, Henry Silverfriend, Evelyn Bubbett and James H. Bubbett, as partners under the name and, style of Koreshan Unity. Her declaration contained special counts upon the following promissory notes:

"$975.                       ESTERO, LEE Co., FLA., *Nov. 21, 1895.*

"For value received, one year from date, for the Koreshan Unity, in consideration of a full settlement of all claims of Mrs. Vienna Parsons and Albert Parsons, her husband, and to which they both agree, at eight per cent interest per annum, I promise to pay nine hundred and seventy-five dollars. Payable to Vienna Parsons at the repository of the Koreshan Unity.

CYRUS R. TEED,
*For the Koreshan Unity.*

"Also interest on full amount, $2100, at six per cent from July 13, 1895, to date of this note.  ·   GEORGE T. ORDWAY,
*General Agent at Estero, Fla.*"

Endorsement on back: "Received on the within note, in part payment, three hundred and fifty dollars ($350.)"

"$975.                    ESTERO, LEE CO., FLA., *Nov. 21, 1895.*

"For value received, six months from date, for the Koreshan Unity, in consideration of a full settlement of all claims made by Mrs. Vienna Parsons and Albert Parsons, her husband, and to which they both agree, at eight per cent interest per annum, I promise to pay nine hundred and seventy-five dollars. Payable to Vienna Parsons at the repository of the Koreshan Unity.                                        CYRUS R. TEED,
                                        *For the Koreshan Unity.*

"Also interest on full amount, $2100, at six per cent from July 13, 1895, to the date of this note.
                              .  GEORGE T. ORDWAY,
Endorsement on back:          *General Agent at Estero, Fla."*

"June 22, 1896.—Received twenty-five dollars, $25.
"July, of the within note.—Received $10.
                                        A. W. PARSONS,
                                        V. R. PARSONS."

There were also the common counts in assumpsit. The defendant Cyrus R. Teed filed a plea of duress, alleging that it was by force of such duress that the notes were executed. The other defendants each filed a plea of the general issue and a special plea denying joint liability, which were duly verified. Issues were formed on the pleas and were submitted to the court for trial, a jury having been waived. The court found the issues for the plaintiff, and entered judgment against all of the defendants for $2244.11 and costs. That judgment was affirmed by the Branch Appellate Court for the First District.

On the trial plaintiff offered in evidence the notes, and the defendants objected to their admission against any of the defendants except Cyrus R. Teed. The objection was overruled and the notes admitted in evidence, whereupon the defendants, except Cyrus R. Teed, duly excepted to the ruling. The question whether the notes were the joint obligations of the defendants was also raised by propositions of law, to the effect that they were not such joint obligations and that the evidence did not show authority in Cyrus R. Teed to bind the other de-

fendants, which were refused by the court and the rulings were excepted to.

Plaintiff testified that the Koreshan Unity is an organization for religious purposes having a location at Washington Heights, Illinois, called Beth Ophrah; also a colony at Estero Island, Florida, the members putting in their money and living as one family, having everything in common; that when the notes were given the defendants were members of the Koreshan Unity, and there were others connected with it, but she did not recollect their names; that Cyrus R. Teed was the founder of the association, made its laws and saw that they were complied with by the members; that he went through the country, lecturing, and getting money for the community, and inducing people to join it; that he made a specialty of getting women with money to join it, and transacted all business of the association; that Ordway was a member and was acting as general agent at Estero Island, Florida, and was a subordinate of Teed; that each of the members gave in all that they had; that she was an associate member, and joined in June, 1895; that she made a loan of $2100 to the Unity while she was a member, and that Dr. Teed agreed at the time that the money should be paid her in full, if, at any time after she came into the Unity, she was in any way dissatisfied and wanted to leave. She and her husband brought their furniture and lived in the community, occupying a cottage on the island. She testified that she severed her connection with the society because she refused to comply with requests to worship Dr. Teed and Mrs. Annie G. Ordway as God, and refused to go to confession to them or to become a spy on the rest of the members. She testified that the money was used to pay a mortgage on the property of the Unity and to buy a horse to re-place one which had died at Estero, Florida; that she left the island in December, 1895; that the notes were made November 21, 1895, before her final departure; that she had

had Teed arrested for the money in Florida, and the notes were given by Teed and Ordway as a settlement of the amount due her; that those who were present when they were executed were herself, her husband, Albert Parsons, Cyrus R. Teed and George T. Ordway; that the notes were made and signed by Teed, and then there was added the provision: "Also interest on full amount, $2100, at six per cent, from July 13, 1895, to date of this note;" that this was done because she called the attention of Teed and Ordway to the fact that interest on the full amount of her claim from the original transaction ought to be allowed, and they both assented to the addition, and that Ordway, as well as Teed, signed the notes. Plaintiff put in evidence a letter signed "C. R. Teed, Messenger of the Covenant," stating that he would restore to her, as fast as he could, the money placed in his hands for the Unity, and that, her spirit not being in the work, it was due her that the money invested by her should be returned.

It is sought to justify the admission of the notes as the obligations of those defendants who were not present and had no part in their execution, upon the ground that the Koreshan Unity is a partnership, and that the evidence showed that Teed and Ordway were authorized to settle with the plaintiff, a retiring partner, and execute the notes for the partnership. Even if the Koreshan Unity could be said to be a partnership, its character is such that the authority of one partner to bind the others by the execution of promissory notes would not be implied. In partnerships not commercial in their nature, such as those of lawyers, doctors and others, called "non-trading," one partner cannot bind the other by the execution of promissory notes, unless authority is expressly given or recognized by all the parties or implied from their general business habits. The issue of negotiable paper by such partnerships is generally neither customary nor necessary, and there is no implied authority

from the existence of the partnership. The partners can only be bound upon proof of authority, and the burden of proof to establish such authority is upon the plaintiff. (*Ulery* v. *Ginrich,* 57 Ill. 531; Parsons on Partnership, 199, note; 4 Am. & Eng. Ency. of Law,—2d ed'.—178.) The association, whatever it was, was not engaged in trade or of a commercial character. No express authority was given to Teed or Ordway to execute these notes, and there was no evidence that either of them had ever exercised such a power or had been recognized as having authority of that character.

The evidence, however, did not prove the existence of a partnership among the defendants. It is true that plaintiff testified that the Koreshan Unity was in the nature of a partnership, but what will constitute a partnership is a question of law, and her conclusion as to the law did not establish the fact. A partnership is a creature of the law merchant, and its origin is founded in that law, which is the custom of merchants recognized and enforced by the courts. One essential feature, which must be always present to constitute a partnership, is that it is formed for business purposes. It is a voluntary association arising out of contract, for the purpose of carrying on a joint undertaking, with the object of making a profit to be shared among the partners. Every definition of a partnership includes the purpose of business and profit. It is a combination of two or more persons of capital or labor or skill, or some or all of these, for the purpose of business, 'for the common benefit. (Parsons on Partnership, 6.) Each partner is an agent of the firm in the scope of its business, and the law relating to it is closely allied to the doctrines of agency. Plaintiff testified that the Koreshan Unity is an organization for religious and social purposes, the members putting in their property, living as one family and having everything in common. According to her testimony there is no profit sharing and no business, and the Unity

is more in the nature of a tenancy in common, or of a club, than anything else. A mere tenancy in common does not constitute a partnership. While they both have the element of joint ownership, a partnership is a business enterprise for the common benefit and profit. To such an association as this the doctrines of partnership will not apply. Plaintiff, in her testimony, calls the payment of the money to Teed a loan, but shows that it was not a loan because it was not to be paid back at all events, but the agreement of Teed was that it should be paid back to her if, at any time after she came into the Unity, she was dissatisfied and wanted to leave. There was no other promise of re-payment and no other time fixed except when she should become dissatisfied and desire to leave the community. She lived in the community and had all the benefits while she remained there, and if she became entitled to a settlement and the withdrawal from the funds of the association of the money which she put in, that fact would not authorize Teed or Ordway to bind the other members, by a personal obligation, to pay her. There was no evidence that Teed or Ordway had ever attempted to bind the other members, individually, by such an undertaking or that they had ever been authorized to do so. The designation "Messenger of the Covenant," attached to Teed's letter of September, 1895, does not even indicate agency. There was no subsequent ratification which would make the defendants liable individually. The payment of $350 was made by Teed, and the two small payments were sent by Virginia Andrews, secretary of the Unity, and perhaps from its funds. The recovery was upon the notes, which were declared upon as partnership obligations of the defendants and which the court admitted as evidence of such obligations, and the evidence did not show the necessary facts to make them such obligations.

The court erred in admitting in evidence the notes over the objection, and also in ruling on the propositions.

of law. The suit was to enforce an alleged personal and partnership liability of the defendants, and the rights of plaintiff, as tenant in common with other members of the Unity, or against its property or Teed, under the alleged agreement, were not involved.

The judgments of the Appellate Court and circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*