MAUDE E. BEEBE, Defendant in Error, *vs.* DORIS KIRK-PATRICK *et al.* Plaintiffs in Error.

*Opinion filed June 16, 1926.*

1. BILLS AND NOTES—*what is the contract of a guarantor of payment.* A contract guaranteeing the payment of a note or a debt is an absolute contract, by which the guarantor undertakes, for a valuable consideration, to pay the debt at maturity if the principal debtor fails to do so, and upon which, if the debt is not paid at maturity, the guarantor may be sued at once; but a contract merely guaranteeing the collection of a note or debt is conditional upon a failure to collect after employment of the ordinary legal means to collect from the original debtor.

2. SAME—*when party is presumed to be an endorser.* One placing his signature upon a negotiable instrument, otherwise than as maker, drawer or acceptor, is deemed to be an endorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity.

3. SAME—*what is a loan.* A loan is money borrowed, to be paid back at all events.

4. SAME—*what words constitute a guaranty of payment.* The words, "I hereby guarantee this loan," followed by a signature endorsed upon notes, constitute an absolute guaranty of the payment of the notes at maturity, and the writer will be regarded as an original promisor, who is bound to pay the notes at maturity and whose duty it is to go to the holder and take them up; and this liability is not dependent upon the prosecution of suit against the maker nor the legality or validity of the notes.

5. ADMINISTRATION—*a claim must be presented within a year although not matured.* The statutory provision that all claims against an estate shall be forever barred if not presented within a year after the granting of letters of administration unless the creditors shall find other estate of the deceased not inventoried, while not applicable to contingent claims, is, under section 67 of the Administration act, applicable to a claim upon which there is an absolute liability although the time of payment is postponed beyond the expiration of the year; and a creditor not having filed such claim within the time prescribed by law is barred from pursuing the assets into the hands of the heirs, devisees or legatees.

6. SAME—*administrator is presumed to have inventoried all assets.* An administrator is an officer of the court, and as such is presumed, in the absence of evidence to the contrary, to have performed his duty of inventorying and accounting for all of the assets of the deceased.

7. DEBTOR AND CREDITOR—*when bill of creditor against heirs of debtor should be dismissed—evidence.* The bill of a creditor seeking to collect from the personal assets in the hands of the heirs of the debtor after distribution and settlement of the estate should be dismissed for want of equity where the creditor failed to file her claim within the time required by statute, and where the claim was subsequently presented to an administrator *de bonis non* but no further action taken thereon the creditor cannot claim the benefit of subsequently discovered assets; and the final report of the administrator showing items of receipt which had no corresponding items in the inventory is not competent evidence against the heirs, the administrator not having been made a party to the suit.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. EDWARD BARRY, Judge, presiding.

STONE & TAYLOR, for plaintiffs in error.

WILLIAM R. BACH, for defendant in error.

Mr. JUSTICE HEARD delivered the opinion of the court:

This is a review, upon *certiorari,* of a judgment of the Appellate Court for the Third District affirming a decree of the circuit court of McLean county in favor of defend-

ant in error against plaintiffs in error in a suit brought by defendant in error against plaintiffs in error, as heirs-at-law of Henry S. Dooley, to enforce the payment by them of a liability of their ancestor.

On December 28, 1912, Henry S. Dooley sold certain houses and lots in Bloomington to J. W. Bishop and took from him a purchase price mortgage for $3200 securing three notes, two for $1250 each and one for $700. A portion of the property was afterwards released from the lien of the mortgage and the debt reduced $700. At the time of the taking of these notes Dooley was the conservator of the estate of Mary A. Brown. In June, 1913, he, as such conservator, made a report to the county court of McLean county in which report appeared the following item: "Paid account of J. W. Bishop loan $2500." On October 8, 1913, Dooley died intestate, leaving him surviving his widow, Eda Dooley, and Doris Kirkpatrick and Esther Havens, as his only heirs-at-law. Samuel C. Dooley was appointed administrator of his estate on October 20, 1913, and on March 30, 1914, filed in the county court of McLean county an inventory of the real and personal property of Henry S. Dooley. The notes in question were found by the administrator among the effects of the deceased and by him turned over to William R. Bach, who succeeded Dooley as conservator of the estate of Mary A. Brown. When found by the administrator each of these notes had endorsed thereon, "I hereby guarantee this loan.—Henry S. Dooley." The evidence does not disclose when or under what circumstances these notations were made. Samuel C. Dooley, as administrator, fixed upon the July term, 1914, of the county court of McLean county as the time for the adjustment of claims against the estate of Henry S. Dooley and gave due notice thereof. Shortly after the death of Dooley Mary A. Brown died, and Bach, by virtue of his appointment as conservator, administered her estate. On October 14, 1914, he sold the notes to defendant in error for

their face value and interest, and she held them and collected the interest thereon until their maturity, December 28, 1915, at which time she agreed in writing with the then owners of the real estate mortgaged to extend the time of payment of the notes for the further term of one year. Samuel C. Dooley resigned as administrator of the estate of Henry S. Dooley in May, 1915, and on June 16, 1915, filed his final report as such administrator, and in this report included as receipts items which are claimed by defendant in error to have not been included in the inventory of March 30, 1914, and which items she claims are after-discovered assets. In this report he showed payments to plaintiffs in error, as distributive shares of the estate, sums greater than the amounts adjudged against them by the decree of the circuit court. May 18, 1915, Eda Dooley, the widow, was appointed administratrix *de bonis non* and acted as such until April 27, 1916, at which time she presented her final report to the county court and was discharged as such administratrix and the estate declared settled. At the October, 1916, term of the county court of McLean county W. B. Leach was appointed administrator *de bonis non* of the estate of Henry S. Dooley. At the June, 1917, term of said court defendant in error filed her claim against the estate of Henry S. Dooley in said court upon the two notes here in question. June 7, 1917, Leach, as administrator *de bonis non,* entered his appearance in said court in the matter of these claims. So far as this record shows, no further action was ever taken in the county court upon these claims. The notes not being paid at the time of their maturity as extended, defendant in error demanded payment from plaintiffs in error, which being refused, she filed the bill herein against them, as heirs of Henry S. Dooley, upon the alleged guaranties upon two theories as stated in her brief: First, that uninventoried assets of the estate of Henry S. Dooley came to plaintiffs in error, who were the only heirs-at-law; and second, that if there was a deficiency

of personal assets in the estate of Henry S. Dooley, his heirs, who admitted the receipt of large amounts of real estate, were personally responsible to defendant in error. Prior to the commencement of this action no attempt was made by defendant in error to enforce collection of the notes either from the maker, from the owners of the mortgaged premises or by foreclosure of the mortgage.

It is contended by plaintiffs in error that the writings in question on the back of the notes were nullities for want of contracting parties, the notes never having been delivered by Dooley in his lifetime but remained in his hands at the time of his death. In the view which we take of this case we do not deem it necessary to pass upon this question. It is claimed by defendant in error that the writings were valid, absolute guaranties of the payment of the notes.

In this State contracts of guaranty of negotiable instruments are of two kinds: contracts guaranteeing the collection of the notes, and contracts guaranteeing the payment of the notes. A contract guaranteeing the collection of a note or debt is conditional in its character, and the guarantor thereby undertakes to pay the debt upon condition that the owner thereof shall make use of the ordinary legal means to collect it from the debtor with diligence but without avail. A contract guaranteeing the payment of a note or a debt is an absolute contract, and by it the guarantor undertakes, for a valuable consideration, to pay the debt at maturity if the principal debtor fails to do so, and upon it, if the debt is not paid at maturity, the guarantor may be sued at once. (*Dillman* v. *Nadelhoffer,* 160 Ill. 121; *Newlan* v. *Harrington,* 24 id. 207.) In this State one placing his signature upon a negotiable instrument, otherwise than as maker, drawer or acceptor, is deemed to be an endorser unless he clearly indicates by appropriate words his intention to be bound in some other capacity. (*Elgin Nat. Bank* v. *Goecke,* 295 Ill. 403; Negotiable Instrument law, sec. 63.) In this case Dooley, by using the words, "I here-

by guarantee this loan," clearly indicated by appropriate words his intention to be bound as a guarantor, if bound at all. In Webster's New International Dictionary the word "loan" is defined as "that which one lends or borrows, esp. a sum of money lent at interest; as, he re-paid the loan." A loan is money borrowed, to be paid back at all events. (*Teed* v. *Parsons,* 202 Ill. 455.) If the words, "I hereby guarantee this loan.—Henry S. Dooley," were not a nullity for want of proper contracting parties, then they constituted an absolute guaranty of the payment of the notes at maturity, and Dooley must be regarded as an original promisor, who was himself bound to pay the notes when they matured, and his duty was, on their maturity, to go to the holder and take them up; (*Gridley* v. *Capen,* 72 Ill. 11; *Gage* v. *Mechanics' Nat. Bank,* 79 id. 62;) and the guarantor's liability was not dependent upon the prosecution of suit against the maker nor the legality or validity of the notes. (*Holm* v. *Jamieson,* 173 Ill. 295.) By paragraph 6 of section 70 of the Administration act (Smith's Stat. 1925, p. 74,) it is provided that all demands not exhibited against an estate within one year from the granting of letters of administration shall be forever barred unless the creditors shall find other estate of the deceased not inventoried or accounted for by the executor or administrator, in which case their claim shall be paid *pro rata* out of such subsequently discovered estate. While this section does not apply to claims dependent upon a contingency which may or may not ripen into a liability where the claim remains contingent for the whole period fixed by statute for presenting claims against the estate of a deceased person, (*Union Trust Co.* v. *Shoemaker,* 258 Ill. 564,) it does apply to claims upon which there is an absolute liability although the time of payment is postponed beyond the expiration of one year from the granting of letters of administration, as "any creditor, whose debt or claim against the estate is not due, may, nevertheless, present the same for allowance and

settlement, and shall, thereupon, be considered as a creditor under this act, and shall receive a dividend of the said decedent's estate, after deducting a rebate of interest for what he shall receive on such debt, to be computed from the time of the allowance thereof to the time such debt would have become due, according to the tenor and effect of the contract." (Administration act, sec. 67.) Under this section defendant in error, if she desired to claim liability upon the alleged guaranties against the estate of Henry S. Dooley, should have presented her claim in the county court of McLean county within one year from the granting of letters testamentary, and having failed to do so her claim is forever barred unless she can find other estate of the deceased not inventoried or accounted for by the administrator. Not having filed her claim within the time prescribed by law she is barred from pursuing the assets, real or personal, into the hands of the heirs, devisees or legatees. The law having given a remedy in such case it must be pursued. (*Union Trust Co.* v. *Shoemaker, supra.*) To have any benefit of subsequently discovered assets she must have her claim allowed by the county court. (*Wingate* v. *Pool,* 25 Ill. 102.) This she has not done.

The evidence in this case does not show that there were any assets of the deceased which were not inventoried or accounted for by the executor or administrator. An administrator is an officer of the court, and as such is presumed, in the absence of evidence to the contrary, to have performed his duty of inventorying and accounting for all of the assets of the deceased. In *Ryan* v. *Jones,* 15 Ill. 1, (decided in 1853, when the period for the presentation of claims was two years from the grant of administration,) it is said: "The presumption at the end of two years from the grant of administration is, that the personal estate has been fully inventoried or accounted for by the executor or administrator." The only attempt made in this case to overcome this presumption was the introduction in evidence

of the final report of the administrator, in which report were found certain items of receipts by the administrator which had no corresponding item in the inventory. No evidence was introduced by defendant in error showing or tending to show that these items of receipt came from sources not inventoried. These items of receipt "were accounted for" by the administrator, as he was charged with them in the report. The administrator was not a party to this suit and his report as to receipts would be binding upon him in a suit against him. Such report is not competent evidence as against plaintiffs in error.

The bill in this case was not framed upon the theory that there was a deficiency of personal assets in the estate of Henry S. Dooley to pay the debts of the deceased, as the bill alleges that all of the assets and property of which Dooley died seized had been disposed of and divided between the widow and the plaintiffs in error by the administrator, and that each of the plaintiffs in error had received assets and property of the estate in an amount greatly in excess of the amount due upon the notes in question, and the evidence in the case shows that the widow and plaintiffs in error each received from the personal estate of the deceased, after the payment of all claims which had been allowed against the estate, the sum of $1578.69.

The evidence in the case showing that defendant in error was not entitled to the relief prayed for in her bill, the circuit court should have dismissed her bill for want of equity, and the Appellate Court erred in affirming the decree.

The decree of the circuit court, and the judgment of the Appellate Court affirming the same, are reversed.

*Judgment reversed.*